UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                       Crim. No. 2:07-cr-141

Roger K. Aletras


**REPORT AND RECOMMENDATION**
(Doc. 39)

      Roger K. Aletras, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed on him in this district following his plea of guilty to one count of conspiring to commit interstate robbery, in violation 18 U.S.C. § 1951(a) (Hobbs Act robbery conspiracy) (Count Two), and one count of committing murder while carrying and using a firearm during a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(j)(1) (Count Four).  (Doc. 39.)  On April 6, 2009, then-Chief United States District Judge William K. Sessions III sentenced Aletras to a term of imprisonment of 180 months on each count, set to run concurrently to each other and consecutively to a sentence of 204 months imposed in the United States District Court for the Southern District of New York for a related firearms conviction, to be followed by a five-year term of supervised release.  (Doc. 44 at 9.)

      Aletras now asserts that the conviction he sustained for violating 18 U.S.C. § 924(j)(1) for committing murder with a firearm during a drug trafficking crime and a crime of violence must be vacated in light of the United States Supreme Court's holding

in *Johnson v. United States*, 135 S. Ct. 2551 (2015) [hereinafter *Johnson II*].  (Doc. 39 at 4.)  The government opposes Aletras's Motion, asserting that *Johnson II* has no impact on Aletras's conviction for violating § 924(j)(1).  (Doc. 41.)  For the reasons set forth below, I recommend that Aletras's § 2255 Motion (Doc. 39) be DENIED.

## Background

I.      **The Indictment and Plea Agreement**

On December 13, 2007, an Indictment was filed in this district charging Aletras with five counts: Count One charged that Aletras knowingly and intentionally possessed with the intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Doc. 3 at 1); Count Two charged Aletras with engaging in a conspiracy with others to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (*id.* at 2); Count Three charged that Aletras carried and used a firearm during and in relation to the two offenses charged in Counts One and Two, as well as brandishing the firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii) (*id.* at 3); Count Four charged Aletras with committing murder while carrying and using a firearm during and in relation to a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(j)(1)[1] (*id.* at 4); and Count Five charged Aletras with knowingly possessing a firearm in or affecting commerce, having previously been convicted of three felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (*id.* at 5).

---

[1]  Although a violation of 18 U.S.C. § 924(j), as charged in Count Four, is punishable by either "death or by imprisonment for any term of years or for life" under 18 U.S.C. § 924(j)(1), on May 5, 2008, the government filed a Notice that it would not seek the death penalty.  (Doc. 13.)

On January 9, 2009, Aletras entered into a binding Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) with the benefit of counsel.  (Doc. 31.)  Pursuant to the Agreement, Aletras agreed to plead guilty to Counts Two and Four of the Indictment and be sentenced to two concurrent 15-year terms of imprisonment, to run consecutively to a sentence imposed in the Southern District of New York.  (*Id.* at 2–3, ¶ 6.)  The remaining counts were to be dismissed at the time of sentencing.  (*Id.* at 3, ¶ 7.)  Specifically, Aletras agreed to plead guilty to "conspir[ing] to commit interstate armed robbery, in violation of 18 U.S.C. § 1951(a); and . . . murder while using a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(j)(1)."  (*Id.* at 1, ¶ 1.)  In the Agreement, after stating that he understood the nature of the charges filed against him and their potential penalties (*id.* at 1, ¶ 2; 5, ¶ 14), Aletras acknowledged his guilt (*id.* at 1–2, ¶ 3).  Furthermore, he acknowledged that by entering into the agreement he waived certain constitutional rights such as the right to a trial by jury and "the right to confront and cross-examine adverse witnesses."  (*Id.* at 5, ¶ 14.)  Additionally, Aletras acknowledged that he entered into the Agreement "of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel."  (*Id.* at 5–6, ¶ 15.)  Finally, Aletras attested that he was "fully satisfied with the representation provided to him by his . . . attorneys," and that he "had full opportunity to consult with them concerning th[e A]greement, concerning the applicability and impact of the Sentencing Guidelines, and concerning the potential terms and conditions of supervised release."  (*Id.*)

On January 9, 2009, Aletras appeared before Judge Sessions for a Change of Plea Hearing.  (Doc. 43.)  The transcript of that proceeding reveals that Judge Sessions engaged Aletras in the full colloquy required under Fed. R. Crim. P. 11.  After Aletras was placed under oath, Judge Sessions ascertained that Aletras was not under the influence of any drugs or alcohol, or in any other way unable to "freely and voluntarily enter a plea."  (*Id.* at 5: 4–15.)  Next, Aletras attested that he had an adequate opportunity to read, review, and discuss the Plea Agreement with his attorney prior to signing it.  (*Id.* at 5: 16–24.)  Furthermore, Aletras stated that he was aware of his constitutional rights and that by pleading guilty he was waiving those rights.  (*Id.* at 8–10.)  This waiver included waiving the "right to appeal the merits of [his] case."  (*Id.* at 10: 7–10.)  Aletras also stated that no one had threatened or pressured him into the Plea Agreement.  (*Id.* at 10: 11–14.)  Judge Sessions carefully explained the elements of the offenses alleged in Counts Two and Four to Aletras.  (*Id.* at 7–9.)

Judge Sessions then proceeded to review the Plea Agreement with Aletras.  (*Id.* at 11–13.)  Aletras acknowledged that he had agreed to plead guilty to Counts Two and Four in exchange for "a term of imprisonment of 15 years consecutive to the 204-month sentence that [he had been sentenced to in] the Southern District of New York."[2]  (*Id.* at 11: 17–19.)  After confirming that there had not "been any other promises or representations made by anyone" to induce Aletras to plead guilty (*id.* at 13: 18–21),

_____

[2]  As later explained in the presentence investigation report (PSR), Aletras had also been prosecuted in the Southern District of New York for the possession of a firearm as a previously convicted felon.  That offense conduct involved the seizure of a firearm in New York during the investigation of the Vermont offense conduct.  Aletras was convicted by way of a guilty plea and sentenced to a 204-month term of imprisonment.  (PSR ¶ 78.)

Judge Sessions directed the Government to provide a factual basis for the plea (*id.* at 14: 17–19).

According to the government's proffer of facts, Aletras and his coconspirator, Kevin Arkenau, planned and executed a robbery in which they stole a car and approximately 50 pounds of marijuana at gun point from Arkenau's former marijuana supplier at a hotel in South Burlington, Vermont.  (*Id.* at 17–21.)  On their way back to New York City, Arkenau and Aletras stopped at a Hotel in Saratoga Springs, New York, to spend the night.  (*Id.* at 21: 8–13.)  After Arkenau had fallen asleep, Aletras put a gun to Arkenau's head and fired two shots, killing him instantly.  (*Id.* at 21:14–21.)  Aletras fled to New York City where he was arrested on February 6, 2003.  (*Id.* at 21–22.)  Upon completion of the government's proffer, Aletras acknowledged the accuracy of those facts and then reaffirmed that he was pleading guilty to the crimes described by the government.  (*Id.* at 23–25.)  Judge Sessions concluded that Aletras' pleas of guilty were voluntary, entered into freely, and supported by an independent basis of fact.  (*Id.* at 24–25.)  Aletras's guilty pleas were accepted and Judge Sessions ordered the preparation of a presentence investigation report (PSR) and set sentencing for April 6, 2009.  (*Id.* at 24–26; Doc. 29.)

## II.    The Presentence Report

A final PSR was issued on March 30, 2009.  The PSR concluded that Aletras faced an advisory sentencing guidelines imprisonment range of 360 months to life.  (PSR at 23, ¶ 107.)  This range was calculated using the November 1, 2008 edition of the United States Sentencing Commission Guidelines Manual (USSG).  (*Id.* at 13, ¶ 48.)

Under the multiple count grouping rules each count was analyzed separately, because each count "involve[d] different victims and represent[ed] separate harms." (*Id.* at ¶ 49.) The base offense level for Count Two, the conspiracy to commit a Hobbs Act robbery, was 20. (*Id.* (citing USSG § 2B3.1(a)).) Five levels were added because Aletras possessed a firearm during the robbery. (*Id.* at ¶ 50(a) (citing USSG § 2B3.1(b)(2)(C)).) Another level was then added because "a controlled substance was taken," which brought the offense level for Count Two to 26. (*Id.* ¶ 50(b) (citing USSG § 2B3.1(b)(6)).) The base level for Count Four, murder with a firearm during a drug trafficking crime, was 43. (*Id.* at 14, ¶ 55 (citing USSG § 2A1.1(a)).) That base level was not increased for any specific offense characteristics.

Under the multiple count grouping rules, the offense level calculation for the marijuana conspiracy alleged in Count Two had no effect on the combined adjusted offense level calculation pursuant to USSG § 3D1.4(c) because the adjusted offense level for Count Two was more than nine offense levels less than the adjusted offense level for Count Four.[3] (*Id.* at 14, ¶¶ 61–67.) Aletras benefitted from a three-level reduction for manifesting an acceptance of responsibility and "assisting authorities by entering a timely guilty plea." (*Id.* at 15, ¶ 69 (citing USSG §§ 3E1.1(a), (b)).) Aletras received 15 criminal history points, which resulted in a criminal history category (CHC) VI. (*Id.* at

---

[3] Under USSG § 3D1.2 Counts Two and Four were treated as separate "Groups" for calculating the total offense level. USSG § 3D1.4(c) provides that when combining Groups to calculate the total offense level, a Group that is "9 or more levels less serious than the Group with the highest offense level," should be disregarded. USSG § 3D1.4(c). This is because, "[s]uch Groups will not increase the applicable offense level." *Id.* The disregarded Group, however, may be used to "provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level." *Id.*

19, ¶ 79 (citing USSG §§ 4A1.1(d), (e)).)  The advisory guideline imprisonment range for the total offense level of 40 and CHC VI was 360 months to life in prison.  (*Id.* at 23, ¶ 107.)

## III.    Sentencing

Given the binding nature of the plea agreement, Aletras did not dispute any of the factual assertions set forth in the PSR nor did he seek a downward departure or variance from the guideline imprisonment range.  At the April 6, 2009 sentencing hearing, Judge Sessions accepted the sentence called for in the binding Plea Agreement.  (Doc. 44 at 4.) The court imposed the agreed-upon sentence of 180 months in prison for each count, to run concurrently to each other, and consecutively to the 204-month sentence Aletras received in the Southern District of New York.  (*Id.* at 9.)  The aggregate federal prison sentence of 32 years was within the Sentencing Guidelines imprisonment range.  (Doc. 34 at 5.)  A five-year term of supervised release was imposed and Aletras was ordered to pay restitution in the amount of $7,465 to cover the cost of the funeral arrangements for Arkenau.  (Doc. 44 at 9–11.)  Aletras did not pursue a direct appeal.

## IV.    Aletras's § 2255 Motion

Aletras now contends in his § 2255 Motion that his conviction for committing a violation of 18 U.S.C. §924(j)(1) "must be vacated" following the Supreme Court's decision in *Johnson II*.  (Doc. 39 at 4.)  Aletras argues that the definition of the term "crime of violence" as that term is used in 18 U.S.C. § 924(c) is unconstitutionally vague. The government opposes Aletras's Motion, asserting (1) that the motion is procedurally barred, (2) that *Johnson II* has no application to Aletras's conviction for conspiracy to

commit Hobbs Act robbery as charged in Count Two, and (3) that *Johnson II* has no

application to Aletras's conviction in Count Four for violating 18 U.S.C. § 924(j).  (Doc.

41.)

## Analysis

### I.       Standards Governing 28 U.S.C. § 2255 Motions

A prisoner in federal custody may file a motion under 28 U.S.C. § 2255 "to

vacate, set aside[,] or correct" his sentence if he believes that his sentence was:

(1) "imposed in violation of the Constitution or laws of the United States," (2) issued by a

court that did not have jurisdiction, (3) in excess of the lawful maximum, or (4) "is

otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is

therefore generally available "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which

inherently results in a complete miscarriage of justice."  *Cuoco v. United States*, 208 F.3d

27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

In bringing a § 2255 petition, "[t]he petitioner bears the burden of proving, by a

preponderance of the evidence, that he is entitled to relief."  *Wiggan v. United States*,

No. 3:15-cv-447 (SRU), 2016 WL 4179838, at *2 (D. Conn. Aug. 5, 2016) (citing *Napoli*

*v. United States*, 45 F.3d 680, 683 (2d Cir. 1995)).  As a *pro se* litigant, however,

Aletras's § 2255 Motion is "held to [a] 'less stringent standard[] than formal pleadings

drafted by lawyers.'"  *Pena v. United States*, 09-CR-0341 (VM), 09-CV-4261 (VM),

2016 WL 3659114, at *2 (S.D.N.Y. June 27, 2016) (quoting *Ferran v. Town of Nassau*,

11 F.3d 21, 22 (2d Cir. 1993)).  Furthermore, because he is proceeding *pro se*, the Court

must construe Aletras's § 2255 Motion "liberally and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## II.      Procedural Bar to Aletras's Claims

The government argues that the Court should deny Aletras's Motion because Aletras's claims are procedurally barred as a result of his failure to pursue them on direct appeal.  (Doc. 41 at 4–5.)  A § 2255 petition "is not intended to be a substitute for a direct appeal." *Wiggan*, 2016 WL 4179838, at *1 (citing *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012)).  Courts "will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." *Harrington*, 689 F.3d at 129 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011)).

Aletras does not allege actual innocence in his Motion.  Therefore, Aletras's claims are barred unless he can demonstrate cause for failing to bring his current claim on direct appeal and that he was prejudiced as a result.  To establish cause, Aletras must "demonstrate 'some objective factor external to the defense' that impeded his ability to appeal." *United States v. Newton*, No. 5:11–cr–50–1, 2014 WL 348195, at *6 (D. Vt. Jan. 31, 2014) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).  Examples of "objective factors" include "the state's creation of an external impediment, situations in which the factual or legal basis for a claim was not reasonably known by the petitioner,

or ineffective assistance of counsel." *Id.* (quoting *Maxwell v. United States*, Nos. 92 CR 1147(KMW), 10 CV 2383(KMW), 2012 WL 1191901, at \*3 (S.D.N.Y. Apr. 10, 2012)); *see also McCleskey*, 499 U.S. at 493–94. To show that he was prejudiced, Aletras "must demonstrate that the constitutional errors raised in the motion actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Newton*, 2014 WL 348195, at \*6 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Here, Aletras has not established cause or prejudice. In his Motion, Aletras states that he did not raise his current claim on direct appeal, because, "[t]he Supreme Court had not yet declared the residual clause of 18 U.S.C. § 924(e) unconstitutionally vague." (Doc. 39 at 4.) Lack of Supreme Court precedent is insufficient to establish cause. *See Bousley*, 523 U.S. at 622. To establish cause based on a claim not presented in a direct appeal, a claim must be "so novel that its legal basis is not reasonably available to counsel." *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Furthermore, the fact that a claim may be futile is not sufficient to establish cause "if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). Therefore, the Supreme Court's subsequent decision in *Johnson II* does not constitute cause for Aletras's failure to pursue a direct appeal. Furthermore, even if Aletras could show cause, he cannot prove he was prejudiced by failing to raise the claim on direct appeal because his claim is meritless, as discussed below. For these reasons, Aletras's Motion is barred by his procedural default.

### III. *Johnson II* Claim

Aletras asserts that this Court should vacate his conviction for violating 18 U.S.C. § 924(j)(1) following the United States Supreme Court's holding in *Johnson II*.[4]  (Doc. 39 at 4.)  In *Johnson II*, the Court held that the residual clause in 18 U.S.C. § 924(e)(2)(B) is unconstitutionally vague.  *Johnson II*, 135 S. Ct. at 2557.  The Supreme Court has held that the holding in *Johnson II* is retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  I discuss this holding, and its implication for Aletras's Motion, in more detail below.

#### A.     The Holding in *Johnson II*

An understanding of the decision in *Johnson II* is helpful to an understanding of Aletras's claim.  *Johnson II* addressed a clause from the "violent felony" definition set forth in 18 U.S.C. § 924(e)(2)(B)(ii).  Section 924(e)(1) is a sentencing enhancement provision that imposes a mandatory minimum sentence of 15-years' imprisonment for any person convicted of violating 18 U.S.C. § 922(g), if that person has been convicted of three prior "violent felonies."  18 U.S.C. § 924(e)(1).  A "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

---

[4]  Aletras does not explicitly cite *Johnson II*, but interpreting his Motion liberally, as I must, I assume his argument is based on the Court's holding in that case.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" comprises the residual clause of § 924(e)(2)(B).  The Supreme Court found this clause was unconstitutionally vague because it was difficult for courts to determine what conduct created a "potential risk of physical injury," as compared to the risk posed by the four enumerated, and seemingly unrelated, crimes in the same subsection.  *See United States v. Hill*, 832 F.3d 135, 145–46 (2d Cir. 2016) (citing *Johnson II*, 135 S. Ct. at 2557–58).

### B.      Johnson II Does Not Apply to Aletras's Count Four Conviction

*Johnson II* "strictly applies only to [those] defendant[s] who [are] convicted of being a felon in possession of a firearm in violation of 18 U.S.C. [§] 922(g)."  *Pena*, 2016 WL 3659114, at *9.  Aletras was not convicted of a violation of § 922(g), and thus, the Supreme Court's ruling in *Johnson II* does not apply to his case.  *See id.*; *see also Carrasco v. United States*, 01-CR-0021 (VM), 16-CV-3952 (VM), 2016 WL 3275397, at *2 (S.D.N.Y. June 3, 2016) (holding *Johnson II* inapplicable in a case where the defendant was not convicted under § 922(g) or sentenced as a career offender under USSG § 4B1.2); *Lopez v. United States*, Civ. No. 16-00352 ACK-KJM, Cr. No. 97-01117 ACK (02), 2016 WL 4766477 (D. Haw. Sept. 12, 2016).  Aletras's *Johnson II*-based claim, therefore, is meritless.

### C.      Remaining Argument

Assuming *arguendo* that the reasoning in *Johnson II* had some application to Aletras's case, his claim would still fail because it is based on a series of erroneous assumptions.  As stated above, Aletras argues in his Motion that *Johnson II* rendered

invalid his conviction under Count Four for violating 18 U.S.C. § 924(j)(1).  (Doc. 39 at

4.)  Section 924(j)(1) states:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
>
>> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

18 U.S.C. § 924(j)(1).  A person violates § 924(c) when that person "during and in

relation to any crime of violence or drug trafficking crime . . . for which the person may

be prosecuted in a court of the United States, uses or carries a firearm . . . ."  18 U.S.C. §

924(c)(1)(A).  Therefore, for a person to be convicted of violating § 924(c)(1)(A), that

person must also have committed a predicate offense that is either a "crime of violence"

or a "drug trafficking crime," for which that person *may* (but does not necessarily have

to) be prosecuted.  *Id.*

Aletras's first erroneous assumption is that the only predicate offense alleged in

Count Four was a Hobbs Act robbery.  (Doc. 39 at 4.)  This assumption is incorrect

because Count Four expressly charged Aletras with violating § 924(c)(1)(A) by

"knowingly carry[ing] and us[ing] a firearm, during and in relation to a drug trafficking

crime and a crime of violence, as alleged in Count 3."  (Doc. 3 at 4.)  Count Three

specifically alleged that Aletras violated § 924(c)(1)(A) by possessing a firearm "during

and in relation to (1) a drug trafficking crime, namely, possession with intent to distribute

marijuana, as alleged in Count 1, and (2) a crime of violence, that is, conspiracy to

commit [Hobbs Act] robbery. . . , as alleged in Count 2."  (*Id.* at 3.)  Therefore, Count

Four charged that Aletras engaged in two predicate crimes while carrying and using the firearm.  Even though Aletras only pleaded guilty to Counts Two and Four, the drug trafficking offense charged in Count One satisfied the predicate offense requirement of § 924(c)(1)(A).  As the government explains, "even assuming the crime-of-violence prong of the indictment were invalid, Aletras was properly convicted of the offense charged in Count 4 on the basis of the drug trafficking prong."  (Doc. 41 at 8–9.)  This point alone renders Aletras's argument meritless.

Even if the drug trafficking offense allegation in Count Four is ignored and the only predicate offense in Count Four that is considered is the Hobbs Act robbery, his claim would nevertheless fail.  In his second erroneous assumption, Aletras assumes that a Hobbs Act robbery can only qualify as a "crime of violence" under § 924(c)(3)(B).  (Doc. 39 at 4.)  Section 924(c)(3) defines a "crime of violence" as

> an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  The Second Circuit has recently and clearly stated that a Hobbs Act robbery is a "crime of violence" under *both* § 924(c)(3)(A) and (B).  *Hill*, 832 F.3d at 144–45.

Finally, assuming even further that a Hobbs Act robbery was the sole predicate offense and that it did not fit the definition of "crime of violence" under § 924(c)(3)(A),

14

Aletras's claim would still fail because Aletras's third assumption—that the definition of a "crime of violence" under § 924(c)(3)(B) is unconstitutionally vague in light of *Johnson II*—is incorrect.  (*See* Doc. 39 at 4.)  Section 924(c)(3)(B) is not unconstitutionally vague, because it does not suffer from the same "double-layered uncertainty embedded in the . . .operation" of the § 924(e) residual clause at issue in *Johnson II*.  *Hill,* 832 F.3d at 145–46.  Aletras's substantive claim is therefore meritless because each assumption underlying his argument is wrong.

## Conclusion

Based on the foregoing, I recommend that Aletras's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 39) be DENIED.  In a proceeding under § 2255, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A "substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason, (ii) a court could resolve the issues in a different manner, or (iii) the questions are adequate to deserve encouragement to proceed further."  *Guzman v. United States*, 277 F.Supp.2d 255, 264–65 (S.D.N.Y. 2003) (citing *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000)).  Aletras has failed to show that his case falls into any one of these three categories.  Accordingly, I further recommend that a certificate of appealability be DENIED.[5]

---

[5]  Aletras does not raise a factual challenge which would require resolution of evidence beyond the record in this case.  Aletras raises only a legal challenge to the conviction in Count Four.  Because the records and files of this case show conclusively that Aletras is not entitled to relief an evidentiary hearing is unnecessary.  *See* 28 U.S.C. § 2255(b).

Dated at Burlington, in the District of Vermont, this 21st day of November, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).